FILED
98 SEP 25 PM 3:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROSS NEELY SYSTEMS, INC., | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 96-B-2865-S |
| OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, | } |
| Defendant. | } |

ENTERED
SEP 2 5 1998

## MEMORANDUM OPINION

Currently before the court is the motion of plaintiff Ross Neely Systems, Inc. ("plaintiff," "Ross Neely," or "RNS") for partial summary judgment. Also before the court is the motion of defendant Occidental Fire & Casualty Company of North Carolina ("defendant" or "Occidental") for summary judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that plaintiff's motion for partial summary judgment is due to be denied and defendant's motion for summary judgment is due to be granted.

This suit arises out of plaintiff's contract for business auto insurance coverage with defendant. In moving for partial summary judgment, plaintiff alleges that defendant breached the contract of insurance. Plaintiff contends that, under the policy of insurance, defendant is liable to pay punitive as well as compensatory damages assessed against plaintiff and one of plaintiff's truck drivers in a civil lawsuit. Defendant contends that, under the same policy, defendant is not liable for any punitive damage awards. Defendant moves for judgment as a matter of law on plaintiff's breach of contract claim, as well as all claims asserted in plaintiff's

55

complaint and amended complaint, including bad faith failure to settle, breach of the enhanced duty of good faith, and refusal to appeal.[1] Defendant also asserts a counterclaim, seeking a declaratory judgment that defendant has no obligation to defend or indemnify plaintiff for any claim for punitive damages.

## FACTUAL SUMMARY

In approximately 1992, plaintiff purchased a business auto insurance policy from Occidental. (*See* Def.'s Ex. A at 14; Def.'s Ex. B.)[2] The policy was negotiated between Ross Neely of RNS and Lee Mitchell of Innovative Underwriters in approximately 1992. (Def.'s Ex. A at 12,14.) The parties do not dispute that the insurance policy included an exclusion relating to punitive damages. (*See* Def.'s Ex. A at 16, 21-22; Def.'s Ex. B at BA201AL, 8/92; Def.'s Ex. C at 3-5.)

In November of 1993, Innovative Underwriters wrote to Tommy Neely of RNS and informed him that Occidental had refused Ross Neely's request to remove the punitive damages exclusion endorsement from the insurance policy. (Def.'s Ex. C at 2.) RNS acknowledged receipt of Innovative Underwriter's letter stating such refusal in a correspondence dated November 30, 1993. (*Id.* at 5.)

---

[1] In their Opposition to defendant's Motion for Summary Judgment, RNS states that they no longer contend that the underlying case should have been appealed. (See Pl.'s Br. in Opp'n at 2.) Therefore, this Memorandum Opinion does not address plaintiff's refusal to appeal claim.

[2] Defendant's evidence in support of their Motion for Summary Judgment is organized as Exhibits A-U. Plaintiff's evidence in support of their Opposition to Defendant's Motion for Summary Judgment is organized as Exhibits 1-8. For the purposes of this Memorandum Opinion, these evidentiary submissions will be referred to as "Def.'s Ex." or "Pl.'s Ex.," followed by the applicable page number or paragraph number. Other evidentiary submissions not organized as Exhibits are referred to by the most appropriate title.

On July 18, 1994, a tractor-trailer unit owned by RNS and being operated in its business by agent Jones, became involved in an accident with an automobile. Kendrick Truss, a passenger in the automobile, sustained bodily injuries as a result of the accident.

Subsequent to the accident, Truss filed a lawsuit against RNS and its driver, Jones, in the Circuit Court of Calhoun County, Alabama. (Def.'s Ex. L.) The lawsuit was tried to a conclusion resulting in a verdict in favor of Truss in the amount of $295,000. The verdict was made up of $45,000 in compensatory damages and $250,000 in punitive damages. (Def.'s Ex. R at 1.) Following the verdict in favor of Truss, Occidental paid the compensatory award and RNS paid the punitive damages award. The interest due on the punitive award was waived by Truss.

## PROCEDURAL HISTORY

On August 22, 1996, RNS filed a complaint against Occidental in Jefferson County Circuit Court. In the complaint, RNS demands relief in the form of compensatory and punitive damages. As the basis of their complaint, RNS states that: "Occidental's actions are intentional and in bad faith, they are abusive and intended to oppress, with no legal or contractual basis or right for its refusal to pay or defend exemplary damages claims." (Compl. ¶ 6.) On November 1, 1996, Occidental removed the action to this court alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332. On the same day, Occidental filed a counterclaim, requesting injunctive relief in the form of a declaratory judgment that Occidental was not liable to RNS for any punitive damages awards. (Answer 6.)

On January 9, 1997, plaintiff filed an amended complaint. In the amended complaint, plaintiff added six new counts, including:

1. Plaintiff's Claim for Breach of the Defendants [sic] Duty of "Enhanced Obligation of Good Faith."
2. Negligently Failing to Deal with the Plaintiff in Good Faith.
3. The Defendant's [sic] Failed to Settle the Underlying Plaintiff's Case in Bad Faith.
4. Plaintiff's Claim that Refusal to Indemnify the Plaintiff with Reference to the Punitive Damages in Truss is contrary to the Public Policy of the State of Alabama.
5. Plaintiffs [sic] Claim Pursuant to Section 29 and 30 of the Motor Carrier Act of 1980.
6. Plaintiff's Claim for Negligently, Wantonly, or Willfully Refusing to Appeal.

(Am. Compl. 2-4.)[3] In August of 1997, Occidental filed an amendment to their answer. Subsequently, the parties filed the Motion for Partial Summary Judgment and Motion for Summary Judgment that are the subject of this Memorandum Opinion.

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of

---

[3] In their Opposition to defendant's Motion for Summary Judgment, plaintiff states that, "We do not contend the underlying case should have been appealed nor do we contend the endorsement, MCS-90, is applicable." (Pl.'s Br. in Opp'n at 2.) Therefore, this Memorandum Opinion will not address plaintiff's claims pursuant to the Motor Carrier Act of 1980 or for "negligently, wantonly, or willfully refusing to appeal."

his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* FED.R.CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman.* 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

DISCUSSION

I.   **Plaintiff's Motion for Partial Summary Judgment**

RNS claims that they are entitled to judgment as a matter of law on their breach of contract claim against Occidental. In support of this contention, RNS argues that the "Form F" endorsement attached to their business auto insurance policy unambiguously provides that Occidental will insure RNS for damages resulting from the wanton conduct of its insured while engaged in the operation of a motor vehicle. (*See* Pl.'s Br. in Supp. of Mot. for Partial Summ. J. at 3-6.)[4] Plaintiff therefore contends that Occidental's failure to pay the punitive damages portion of the *Truss* damages award constitutes a violation of the "Form F" endorsement contained in the insurance policy.

The insurance policy at issue contains two seemingly conflicting endorsements. The endorsement numbered BA201AL (8/92) reads:

> PUNITIVE DAMAGES EXCLUSION - ALABAMA
>
> LIABILITY INSURANCE is changed by adding the following exclusion:
>
> This insurance does not apply to punitive and/or exemplary damage except in cases of wrongful death.

(Def.'s Ex. B at BA201AL (8/92).) Such language is clearly intended to exempt punitive damage

---

[4] Plaintiff also argues that they are entitled to partial summary judgment on the alternative grounds that (1) the punitive damages exclusion contained in the policy is void as against public policy, (2) RNS is not responsible for punitive damages incurred through the acts of its agent Jones, and (3) the "doctrine of reasonable expectations" requires that the contract be construed to hold defendant liable for punitive damages. Because the court finds that an analysis of the contract's language and construction is dispositive of plaintiff's motion, the court will not address plaintiff's alternative contentions in this Memorandum Opinion.

awards from Occidental's coverage. The evidence shows that both Occidental and RNS understood that the contract contained a punitive damages exclusion at the time the Truss accident occurred. (*See* Def.'s Ex. A at 16; Def.'s Ex. C at 3-5.)

However, the insurance policy also contains an endorsement titled "Form F." The first paragraph of "Form F" reads as follows:

> 1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability *in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby*; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

(Pl.'s Substituted Insurance Policy at Form F)(emphasis added). This provision makes clear that the purpose of the "Form F" endorsement is to function as proof of financial responsibility in gaining certification under Alabama law. In keeping with this purpose, the above-cited provision clearly intends to impose coverage to the extent of the coverage required by "the provisions of any State motor carrier law or regulations promulgated by any State Commission."

In interpreting the extent of the insurance coverage required under this provision, it is necessary to look to the regulations promulgated by the Alabama Public Service Commission. Paragraph 4.1 of those regulations provides:

> No person shall transport passengers or property by motor vehicle on the highways of this State for compensation . . . unless and until there shall have been filed with and accepted by the Commission a

7

> surety bond, certificate of insurance, proof of qualifications as a self-insurer, or other securities or agreements, in not less than the amounts prescribed by this rule, conditioned to pay any final judgment recovered against such person for bodily injuries to or the death of any person resulting from the *negligent or wanton* operation, maintenance or use of motor vehicles on the highways of this State, or for loss of or damage to property of others.

(Alabama Public Service Commission, Motor Carrier General Orders Rules and Regulations Pamphlet No. 1989 at 11.)(emphasis added). The "Form F " endorsement to Occidental's insurance policy contemplates that Occidental will provide coverage in compliance with regulation 4.1 as set out above. Because the language of regulation 4.1 requires coverage for injuries resulting from the "negligent or wanton" operation of motor vehicles on Alabama highways, this regulation would seem to work in conjunction with the "Form F" language to require Occidental to pay for punitive as well as compensatory damage awards against the insured, RNS. However, this construction of the "Form F" provision stands in direct conflict with the punitive damages exclusion contained in the insurance policy.

The court is aware that, in interpreting a contract of insurance with ambiguous provisions, the contract must be construed most strongly against the insurer, and liberally in favor of the insured. *Royal Indemnity Co. v. Metzger Brothers, Inc.*, 299 So.2d 232, 241 (Ala. 1974)(citations omitted). However, the court finds that defendant's failure to pay the *Truss* punitive damages award does not constitute a breach of the "Form F" provision of the insurance contract. Although the "Form F" provision directs that Occidental provide insurance to the extent contemplated in the regulations, regulation 4.1 exceeds the authority set forth in the enabling statute passed by the Alabama legislature.

8

The enabling statute enacted by the Alabama legislature is found in § 37-3-18 of the Alabama Code. Section 37-3-18 of the Alabama Code specifically provides that:

> No certificate or permit shall be issued to a motor carrier or remain in force, and no motor carrier subject to the provisions of this chapter shall engage in any operation on any highway of this state, unless such carrier complies with such reasonable rules and regulations as the commission shall prescribe governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, any final judgments recovered against such motor carrier for bodily injuries to or the death of any person resulting from the *negligent* operation, maintenance or use of motor vehicles under certificate or permit or for loss or damage to property of others.

Ala. Code § 37-3-18 (1975)(emphasis added). In the enabling statute, the Alabama legislature expressly provides that the commission may prescribe reasonable rules and regulations governing final judgments that result from the *negligent* operation of motor carriers. The statute does not enable the commission to enact regulations governing final judgments as the result of the *wanton* operation of motor carriers. Therefore, the motor carrier regulation on which plaintiff relies for the proposition that defendant breached the contract is not valid to the extent that it conflicts with the enabling statute passed by the Alabama legislature.

In determining that plaintiff is not entitled to partial summary judgment on their breach of contract claim, the court does not find that the Alabama Public Service Commission's regulation 4.1 is void. However, as the Alabama Supreme Court explained in *Ex parte State Dep't of Human Resources*, 548 So.2d 176 (Ala. 1988), "[t]he provisions of the statute will prevail in any case of conflict between a statute and an agency regulation." *Id.* at 178. In *Ex parte State Dep't of Human Resources*, the Alabama Supreme Court reversed the Alabama Court of Civil Appeals, which had concluded that the legislative intent in enacting the Alabama Administrative Procedures

9

Act was not to discourage agencies from adopting procedures conferring additional rights upon the public. *Id.* at 177. The opinion then explains why the mandates of the enabling statutes govern the regulating authority of the government agencies at issue:

> When the legislature established the procedures for appeals delineated in § 41-22-12 through § 41-22-20, Code 1975, it intended that a uniform procedure be established that would apply to and govern all agencies covered by the AAPA; it did not intend to grant, nor did it grant, to the agency any authority to make rules in conflict with those specific sections; *rules of agencies should not be allowed to erode or repeal such intended uniformity*; variations should occur only through legislation creating "other law," not through an agency rule or regulation that conflicts with the AAPA provisions.

*Id.* at 178.(emphasis added).

The court finds the Alabama Supreme Court's reasoning persuasive in the current context. Although the contract at issue directs that the parties comply with agency regulations concerning insurance coverage for damage awards, the agency regulations require greater coverage for damage awards than the Alabama legislature contemplated in passing the enabling statute. Therefore, in construing the contract at issue, the court reads the agency regulation as imposing no further liability on motor carrier insurers than the legislature directs in the enabling statute of the Alabama Code. As a result, plaintiff's argument that defendant breached the "Form F" endorsement because they did not pay the punitive damage award assessed against RNS in the *Truss* lawsuit fails as a matter of law.

As an alternative ground for denying plaintiff's motion for partial summary judgment, and assuming that the "Form F" endorsement is enforceable as written, the court finds that, as defendant argues, the "Form F" endorsement does not direct that Occidental pay all punitive

damages awarded against the insured. The "Form F" endorsement contained in the insurance policy is intended to protect the public, not to alter the agreement between the parties. Therefore, the "Form F" endorsement functions not as a promise by the insurer to cover all punitive damage awards, but as a guarantee to the public that the insurer will be liable for such awards if the insured is unable to pay because of insolvency or other extenuating circumstances. The court finds that the relevant provision of the "Form F" endorsement was not triggered in this instance because RNS paid Truss the punitive damages award, thus alleviating Occidental's potential liability under "Form F" of the policy.

Plaintiff's suggestion that "Form F" of the insurance policy requires Occidental to pay all punitive damage awards assessed against the insured misconstrues the purpose of the "Form F" endorsement. The purpose of Alabama's Motor Carrier Act is not for the protection of the insured, but for the protection of the public. *See Service Stages, Inc. v. Central Surety & Ins. Co.*, 231 Ala. 417, 418 (1936); *Fidelity & Cas. Co. of New York v. Jacks*, 231 Ala. 394, 397-98 (1936). Motor carrier endorsements, such as "Form F," do not affect the terms of the agreement between the insurer and the insured and are not intended to create coverage or an ambiguity in the policy. *See generally, Harco Nat'l Ins. Co. v. Bobac Trucking, Inc.*, 107 F.3d 733, 735 (9th Cir. 1997)(stating that the purpose of the MCS-90 is to protect the public, not to create a windfall to the insured); *Canal Ins. Co. v. First General Ins. Co.*, 889 F.2d 604, 610 (5th Cir. 1989)(observing that MCS-90 protection "serves no purpose as against the insured"), *modified*, 901 F.2d 45 (5th Cir. 1990) *Robert E. Lee & Associates, Inc. v. David J. Peters, et al.*, 563 N.W.2d 546, 550 (Wis.App. 1997)(holding that motor carrier endorsements do not affect the terms of the agreement between the insurer and insured). As defendant suggests, motor carrier

11

endorsements such as "Form F" function to impose liability on an insurer where financial insolvency renders the insured unable to reimburse a member of the public who has been injured as the result of the motor carrier's wrongful acts. (*See* Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. at 6-8.) There is no evidence to suggest that the "Form F" endorsement may serve as a vehicle for the insured to sue and collect a judgment against the insurer, as plaintiff attempts to do here. Therefore, plaintiff's argument that RNS has standing to sue Occidental for breach of the "Form F" endorsement is in error, and plaintiff's Motion for Partial Summary Judgment as to the breach of contract claim is due to be denied.

II.     **Defendant's Motion for Summary Judgment on Plaintiff's Breach of Contract Claim**

Occidental claims that they are entitled to judgment as a matter of law on RNS's breach of contract claim. For the same reasons as stated in discussing plaintiff's Motion for Partial Summary Judgment, the court finds that Occidental is entitled to judgment as a matter of law on RNS's claim that Occidental breached the contract of insurance between the parties.

The court finds that there is no genuine issue of material fact as to plaintiff's breach of contract claim. Even construing the terms of the contract liberally in favor of plaintiff, the "Form F" endorsement must be construed in a way that does not conflict with Alabama law. The enabling statute of the Alabama Code only grants the Alabama Public Service Commission the regulatory authority to require motor carriers and insurers to provide coverage to the public for acts of negligence.

Assuming however, that Form F is valid as written, defendant is entitled to summary judgment on plaintiff's breach of contract claim on the alternative ground that the purpose of the "Form F" endorsement is to protect the public against insolvent tortfeasors. Motor carrier

endorsements are legally required to be included in motor carrier insurance contracts for the purpose of protecting the public from insolvent tortfeasors. To construe "Form F" to hold defendant liable to plaintiff for all punitive damages assessments incurred against plaintiff would thwart the intentions of the lawmaking bodies that require such endorsements in insurance policies. In the current contract of insurance, the parties agreed to an endorsement excluding punitive damages from coverage under the policy. There is no evidence that the "Form F" endorsement was intended to change this term of the contract. For these reasons, defendant's Motion for Summary Judgment as to plaintiff's breach of contract claim is due to be granted.

**III.    Defendant's Motion for Summary Judgment on Plaintiff's Bad Faith Failure to Settle Claim[5]**

Occidental asserts that they are entitled to judgment as a matter of law on plaintiff's claim that Occidental breached its enhanced obligation of good faith in handling and failing to settle the *Truss* lawsuit. Because the evidence presented by RNS raises no genuine issue of material fact as to this claim, Occidental's Motion for Summary Judgment as to this claim is due to be granted.

In determining whether Occidental breached their duty of good faith in conducting the *Truss* lawsuit, the court adopts the guidelines set by the Alabama Supreme Court in *L & S Roofing Supply Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 521 So.2d 1298 (Ala. 1987).[6] As stated in

---

[5] For the purposes of this Memorandum Opinion, the court will treat plaintiff's separate claims for breach of the enhanced obligation of good faith, negligent breach of good faith, and bad faith failure to settle as one claim that defendant breached their duty of good faith in failing to settle plaintiff's underlying case.

[6] In adopting these guidelines, the court is aware that *L & S Roofing* involved a reservation of rights between the insurer and insured. There was no reservation of rights by Occidental in the *Truss* case. However, assuming *arguendo*, that *L & S Roofing* applies to the facts of this case, plaintiff has not submitted substantial evidence of a violation of the principles

13

*L & S Roofing*, when there is a conflict of interest between the insurer and the insured in defending a lawsuit, the insurer's duty of good faith consists of four elements. First, the insurer must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, the insurer must retain competent defense counsel for the insured and both retained defense counsel and the insurer must understand that only the insured is the client. Third, the company has the responsibility for fully informing the insured of all developments relevant to his policy coverage and the progress of the lawsuit, including all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk. *See L & S Roofing*, 521 So.2d at 1303(quoting *Tank v. State Farm Fire & Casualty Co.*, 715 P.2d 1133,1137 (1986)).

  Defendant's evidence shows that Occidental complied with the four requirements set out above. Plaintiff has failed to bring forth evidence sufficient to create a genuine issue of material fact as to any of these four requirements. As to the first requirement, defendant's evidence shows that Occidental, through its insurance adjuster, made a reasonable investigation concerning the Truss accident and the injuries sustained by the parties. (*See* Def.'s Ex. J, Q.) In support of their contention that Occidental failed to investigate, plaintiff presents as evidence the statement of Tom Burgess, expert for the plaintiff. (*See* Pl.'s Rule 26 Disclosure, Statement of Tom Burgess.) However, Mr. Burgess' unsupported assertions that Occidental failed to talk to the state trooper involved in the accident and failed to investigate the driver's compliance with DOT regulations

---

discussed in *L & S Roofing*.

14

do not raise a genuine issue of material fact in light of defendant's evidence which details a thorough investigation of the accident and injuries.

As to the second element, plaintiff does not contend that Occidental did not hire competent defense counsel for RNS in defending the Truss lawsuit. Furthermore, there is no evidence to suggest that Curtis Wright, the lawyer hired by Occidental, did not understand that RNS was his client. The evidence does show that Mr. Wright contacted RNS to discuss the Truss suit shortly after he was hired to represent RNS and had discussions with John Miller, vice-president of RNS, during the *Truss* litigation. (*See* Def.'s Ex. N at 41, 47-49; Def.'s Ex. O at 14-15, 24-26.) Therefore, plaintiff fails to meet its evidentiary burden with regard to this requirement of their bad faith claim.

The third requirement in bringing a bad faith claim is that the insurer must fully inform the insured of all developments relevant to his policy coverage and the progress of the lawsuit, including all settlement offers. Defendant's evidence shows that RNS was informed in writing that Occidental intended to limit policy coverage to punitive damages. (Def.'s Ex. C at 7.) Defendant's evidence also shows that Curtis Wright communicated with John Miller of RNS more than once concerning the progress of the *Truss* suit. (*See* Def.'s Ex. N at 41, 47-49; Def.'s Ex. O at 14-15, 24.) Concerning settlement offers, John Miller has testified that Curtis Wright informed him of two settlement demands made by Truss, one for $120,000 and one for $90,000. (Def.'s Ex. N at 47-48.) John Miller also testifies that he was made aware of Occidental's offer to settle the case for $25,000-$30,000. (Def.'s Ex. N at 49.) In opposition to this evidence, plaintiff offers John Miller's affidavit which states that Miller never received any letters advising him of settlement offers and that he did not attend the settlement conference conducted at the

courthouse prior to the *Truss* trial. (*See* Supplemental Miller Aff.) Miller's assertions in his affidavit do not conflict with his deposition testimony. Thus, the court interprets the evidence concerning settlement offers to show that Wright communicated to Miller the various settlement offers made during the Truss litigation, although Wright did not document such settlement offers by letter and did not include Miller in a settlement conference. Thus, even taking the evidence in a light most favorable to the plaintiff, plaintiff has failed to raise a genuine issue of material fact as to the third requirement of the defendant's duty of good faith.

As to the fourth requirement, plaintiff has failed to produce evidence raising a genuine issue of material fact as to whether Occidental engaged in actions demonstrating a greater concern for the insurer's monetary interest than for the insured's financial risk. In support of their argument that Occidental breached their duty of good faith, RNS offers the deposition testimony of Occidental's Senior Claims Representative Robert Shannonhouse, who states that Occidental did not defend RNS as to all issues and conducted settlement conferences based on the fact that Occidental was only responsible for compensatory damages. (Def.'s Ex. M at 18.) However, the fact that Occidental intended to cover only punitive damages and conducted the Truss suit accordingly does not constitute evidence that Occidental had a greater concern for its monetary interests than for RNS's financial risk.

According to the evidence, prior to trial, all parties to the lawsuit considered RNS's financial risk to be slight. Mr. Wright did not consider that the judge would even allow punitive damages until the time of trial. The fact that the case went sour at trial should not allow the parties to conclude in retrospect that Occidental breached their duty of good faith in failing to settle the case. As the Alabama Supreme Court has stated: "the mere fact that an insurer refuses

16

an offer to settle within policy limits during the pendency of a coverage trial does not mean that the insurer has breached a duty owed to its insured." *Universal Underwriters Ins. Co. v. East Central Alabama Ford-Mercury, Inc., et al.*, 574 So.2d 716, 726 (Ala. 1990)(quoting *Mowry v. Badger State Mut. Cas. Co.*, 385 N.W.2d 171, 184 (1986)). A reasonable jury could not conclude from the statements of Mr. Shannonhouse that Occidental took actions reflecting a greater concern for its monetary risks than for RNS's financial risk. Rather, Mr. Shannonhouse's statements merely reflect Occidental's understanding of the policy limits on punitive damages.

The court finds that, in the *Truss* litigation, defendant fulfilled all requirements of the duty of good faith imposed upon insurers. Therefore, defendant's motion for summary judgment as to all claims concerning an enhanced duty of good faith or bad faith refusal to settle is due to be granted.

## CONCLUSION

On consideration of all the evidence in the case, the court concludes that no genuine issue of material fact exist and defendant is entitled to judgment as a matter of law on all claims. Accordingly, defendant's Motion for Summary Judgment is due to be granted and plaintiff's Motion for Partial Summary Judgment is due to be denied. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 25th day of September, 1998.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge